UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NARCEDARIA RIVERA, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. |
| MICHAEL J. ASTRUE, | § | SA-09-CV-0235 XR (NN) |
| Commissioner of the Social Security Administration, | § § § | |
| Defendant. | § § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   Honorable Xavier Rodriguez
      United States District Judge

### Introduction

Plaintiff Narcedaria Rivera brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Rivera is not disabled for the purposes of the Social Security Act (the Act) and denying Rivera's application for Supplemental Security Insurance (SSI) benefits. Rivera asked the district court to reverse the Commissioner's decision and to render judgment in her favor. In the alternative, Rivera asked the district court to reverse the decision and remand the case for further proceedings.

After considering Rivera's brief in support of her complaint,[1] the brief in support of the

---

[1] Docket entry # 16.

Commissioner's decision,[2] Rivera's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record in this case, Rivera exhausted her administrative remedies prior to filing this action in federal court.  Rivera applied for SSI on December 7, 2006, alleging disability beginning on June 1, 2005.[5]  Rivera associated no event with her alleged onset date. The Commissioner denied the application initially and on reconsideration.[6]  Rivera then asked for

---

[2]Docket entry # 18.

[3]Docket entry # 20.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 103.

[6]*Id*. at pp. 58-59.

a hearing before an ALJ.[7] An ALJ held a hearing on August 19, 2008.[8] The ALJ issued a decision on October 31, 2008, concluding that Rivera is not disabled within the meaning of the Act.[9] Rivera asked the Appeals Council to review the decision.[10] On January 23, 2009, the Appeals Council declined to review the decision, determining no reason existed for a review.[11] The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). After receiving permission to proceed in forma pauperis, Rivera filed this action on March 31, 2009 seeking review of the Commissioner's decision.[12]

## Issue Presented

> Is the ALJ's decision that Rivera is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

## Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the

---

[7] *Id.* at p. 73.

[8] *Id.* at p. 18.

[9] *Id.* at pp. 4-15.

[10] *Id.* at p. 17.

[11] *Id.* at p. 1.

[12] Docket entry # 3.

Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

---

[13] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[14] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16] *Martinez*, 64 F.3d at 173.

[17] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18] *Martinez*, 64 F.3d at 174.

education and work experience.[19]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21] A claimant shall be determined to be disabled only if her physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[22]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[23] A finding that a claimant is disabled or not disabled at any

---

[19] *Id.*

[20] 42 U.S.C. § 1382(a)(1) & (2).

[21] 42 U.S.C. § 1382c(a)(3)(A).

[22] 42 U.S.C. § 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520 and 416.920.

5

point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[25]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[26]  The second step involves determining whether the claimant's impairment is severe.[27]  If it is not severe, the claimant is deemed not disabled.[28]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[29]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[30]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[31]  If the claimant is still able to do her past work, the claimant is not disabled.[32]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities,

---

[24]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[25]20 C.F.R. §§ 404.1520 and 416.920.

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

age, education, and work experience, to do other work.[33] If the claimant cannot do other work, she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[34] Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account her exertional and nonexertional limitations, able to maintain for a significant period of time.[35] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[36]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process. At step one, the ALJ determined that although Rivera had worked since her alleged on-set date, she had done no substantial gainful work since that date.[37] At step two, the ALJ determined that Rivera has the following severe impairments: bilateral knee arthritis, minor breathing problems, obesity, and major depression, single episode. At step three, the ALJ determined that these impairments do not meet or medically equal a listed impairment. At step four, the ALJ found that Rivera can perform her past relevant work as a store clerk and concluded that Rivera is not

---

[33]*Id.*

[34]*Leggett*, 67 F.3d at 564.

[35]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[37]SSA record, p. 9.

disabled.[38]

## C. Rivera's Allegations of Error

Rivera complains about the ALJ's treatment of her mental impairment. Rivera maintains the ALJ's finding that she can perform simple jobs within her physical capabilities is erroneous. Rivera's argument is based on the faulty assumption that the ALJ rejected the opinion of state-agency-medical-consultant Dr. Lee Wallace. Dr. Wallace opined that Rivera is markedly limited in the ability to remember detailed instructions and the ability to carry out detailed instructions.[39] Rivera contends the ALJ rejected this opinion, but there is no indication the ALJ rejected the opinion. Instead, the ALJ's opinion shows the ALJ accepted the opinion. The opinion shows the ALJ accepted the opinion because the ALJ limited Rivera to "simple jobs" in assessing Rivera's residual functional capacity.

The ALJ, however, did reject Dr. Wallace's opinion about Rivera's ability to maintain concentration, persistence or pace. Dr. Wallace opined that Rivera is mildly limited in the ability to maintain concentration, persistence or pace; in contrast, the ALJ determined that Rivera was moderately limited in that ability. Rivera does not complain about this aspect of the ALJ's treatment of Dr. Wallace's opinion, probably because the ALJ found a greater degree of limitation than did Dr. Wallace.

The ALJ also rejected Dr. Wallace's opinion about Rivera's limitation in maintaining social functioning. Dr. Wallace opined that Rivera was moderately restricted in the ability to maintain social functioning, but the ALJ found that Rivera was mildly limited. Rivera does not

---

[38]*Id*. at p. 15.

[39]*Id*. at p. 359.

complain about this aspect of the ALJ's treatment of Dr. Wallace's opinion.

The ALJ also rejected Dr. Wallace's opinion about Rivera's limitation in activities of daily living.  "*Activities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [personal] grooming and hygiene, using telephones and directories, and using a post office."[40] The ALJ is required to assess the claimant's ability to initiate and participate in daily activities independent of supervision or direction.  Dr. Wallace opined that Rivera was moderately restricted in the activities of daily living, but the ALJ found that Rivera was not restricted in that area.  The ALJ listed several daily activities indicating that Rivera can initiate and participate in activities of daily living independent of supervision or direction.[41]  Rivera criticizes the ALJ's inclusion of going to the laundry outside her apartment building as an activity showing no restriction in activities of daily living—because Rivera testified that "*we* go out to wash,"[42] meaning that she accompanies a family member—but there is nothing in the accompaniment of a family member that renders the ALJ's assessment erroneous.  Moreover, the ALJ's assessment is supported by substantial evidence.  No evidence suggests that Rivera is restricted in activities of daily living.

Rivera argues that the ALJ substituted his opinion about Rivera's mental abilities for Dr.

---

[40]20 C.F.R. pt. 404, subpt. B, app. I,§ 12.00C1.

[41]SSA record, p. 10 (writing that Rivera "goes to the doctor, her psychiatrist, her counselor, and to grocery shop. . . baby sits her grandchildren. . . some cooking, washing dishes, doing the laundry (for which she has to leave the building) television, radio, reading the newspaper, mopping and sweeping").

[42]Docket entry # 16, p. 11 (emphasis added).

Wallace's uncontroverted opinion by finding that Rivera is capable of remembering detailed instructions and has the ability to carry out detailed instructions.[43] If an ALJ rejects the diagnoses and opinions from a medical expert without specific and legitimate reasons, the ALJ impermissibly substitutes a layman's view of a disorder in lieu of an expert opinion.[44] The ALJ, however, did not find that Rivera can remember detailed instructions or carry out detailed instructions. Instead, the ALJ found that Rivera is limited to simple jobs. Rivera criticizes the ALJ for forming his assessment without an expert medical opinion, but Rivera was examined by a state-agency medical professional. Dr. Arthur Bouton—a clinical psychologist—examined Rivera on February 6, 2007—three months before Dr. Wallace's consultation. Dr. Bouton found that Rivera's responses to questions were "logical, coherent, and goal-directed."[45] He found no evidence of formal thought disorder, perceptual abnormalities, or significant cognitive impairment.[46] Dr. Bouton observed that Rivera was preoccupied with financial problems and concerns about her sons.[47] Although Rivera complained about forgetfulness, Rivera's scores on the Folstein mini-mental state examination[48] were average (Rivera scored 28 out of a possible 30)

---

[43] Rivera conceded in her reply brief that the ALJ did not find that she is capable of remembering detailed instructions and can carry out detailed instructions.

[44] *Wiggins v. Apfel*, 29 F. Supp. 2d 486, 492 (N.D. Ill. 1998) ("If an ALJ indulges his layman's view of a disorder in lieu of an expert opinion, the ALJ's decision lacks evidentiary support and must be returned to the Administration for further proceedings.").

[45] SSA record, p. 315.

[46] *Id*.

[47] *Id*.

[48] Medical professionals use the Folstein mini-mental status examination to screen for cognitive impairment, often for dementia. The examination can be used to track changes in cognitive ability

and Rivera immediately recalled three objects and retained and repeated the same three objects after a two-minute delay.[49] This evidence supports the ALJ's opinion statement that Rivera is not as limited as Dr. Wallace found.[50] The ALJ did not substitute his opinion for a medical expert's opinion; instead, the ALJ reconciled Dr. Wallace's opinion with Rivera's testimony about alleged limitations and the results of Dr. Bouton's mental examination.

Rivera also contends the ALJ made a legal error in assessing her mental residual functional capacity. She maintains the ALJ failed to render a function-by-function assessment of her capabilities to perform work-related mental activities, and in particular that the ALJ did not determine that she can carry out simple tasks and follow simple instructions.[51] Because a finding that Rivera can carry out simple tasks and follow simple instructions is implicit in the ALJ's assessment of Rivera's residual functional capacity (RFC), in essence, Rivera seeks a remand because the ALJ did not explicitly state in his opinion that she has the capacity to carry out simple tasks and follow simple instructions.

In assessing a claimant's RFC, the Commissioner's regulations require the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities,

---

over time. The test takes about 10 minutes and tests various functions, including arithmetic, memory and orientation. Penne Sims, Ph.D., *Neuropsychology of Mild Cognitive Impairment, Alzheimer's Disease, Dementia with Lewy Bodies & Frontotemporal Dementia*, available at http://ci.columbia.edu/c1182/web/sect_6/c1182_s6_3.html.

[49]*Id*. at p. 316.

[50]*Id*. at p. 15.

[51]Docket entry # 16, pp. 15-16.

observations)."[52]  The ALJ discussed the basis for his assessment of Rivera's RFC in five single-spaced pages.[53]  The ALJ addressed the medical source opinions and discussed each of Rivera's complaints.  Where the RFC assessment conflicted with a medical-source opinion, the ALJ explained why the opinion was not adopted.

Rivera maintains that the Tenth Circuit's opinion in *Wiederholt v. Barnhart* requires the district judge to reverse the Commissioner's decision, but that opinion does not control this case.  In *Wiederholt*, the Seventh Circuit reversed the Commissioner's decision based on a flawed hypothetical question to the vocational expert (VE).  When the ALJ asked the VE about what types of jobs a person with the claimant's impairments could perform, the ALJ asked about a person who was limited to "simple, unskilled" tasks mentally, without including his finding that the claimant had moderate difficulties maintaining concentration, persistence, or pace.  The court determined the hypothetical question was flawed because the question omitted moderate difficulties in maintaining concentration, persistence, or pace impairments, and because no evidence suggested the VE heard testimony or other evidence to form the basis of an opinion incorporating that specific finding.[54]

In this case, the ALJ found that Rivera was limited to simple jobs.  After reviewing Rivera's employment history and hearing Rivera's testimony, the VE testified that Rivera has

---

[52]SSR 96-8p, Policy Interpretation Ruling Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, section captioned "Narrative Discussion Requirements," 07/02/96.

[53]SSA record, pp. 11-15.

[54]*Wiederholt v. Barnhart*, 121 Fed. App'x 833, 839 (10th Cir. 2005).

previously worked as store cashier and a housekeeper.[55] The ALJ asked the VE whether those jobs were simple jobs.[56] The VE responded, "yes." In addition, Rivera's advocate questioned the VE about Dr. Wallace's mental RFC during the hearing. In the assessment, Dr. Wallace opined that Rivera is not significantly limited in the following abilities: (1) to remember locations and work-like procedures, (2) to understand and remember very short and simple instructions, (3) to carry out very short and simple instructions, and (4) to make simple work-related decisions.[57] The record does not reflect a flawed hypothetical question because the ALJ's questions reflect his finding about Rivera's mental limitation—that Rivera is limited to simple jobs.

 Ultimately, the ALJ determined that Rivera can perform her past relevant work as a store clerk.[58] Rivera maintains this determination is not supported by substantial evidence because the VE's testimony is inconsistent with the Dictionary of Occupational Titles (DOT). Because she maintains that a store clerk must be able to follow detailed instructions, and because she is markedly limited in the ability to follow detailed instructions, Rivera maintains the VE's testimony that she can work as a store clerk is erroneous. Rivera maintains that if the ALJ had properly weighed and adopted Dr. Wallace's mental RFC assessment, the ALJ would have found that her inability to understand, remember and carry out detailed instructions precludes her from returning to her work as a store clerk.

---

[55]SSA record, p. 47.

[56]*Id*. at p. 50.

[57]*Id*. at. p. 359.

[58]*Id*. at p. 15.

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . . [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants [are] not . . . permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.[59]

According to the DOT, a cashier or store clerk requires Reasoning Development Level 3. The DOT defines Reasoning Development Level 3 as follows: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Rivera's argument is based on the assumption that Level 3 reasoning requires the ability to understand, remember and carry out detailed instructions because the definition of Reasoning Development Level 2 includes the language, "detailed . . . instructions." The DOT defines Level 2 as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Unlike the definition of Level 2, the definition of Level 3 does not use the language, "detailed. . . instructions." Rather than require the ability to carry out detailed but uninvolved written or oral instructions, Level 3 requires the ability to carry out instructions furnished in written, oral, or diagrammatic form.

Because Level 3 does not explicitly state that a person must have the ability to carry out detailed instructions, there is no explicit conflict between a finding that a person who lacks the

---

[59] *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

ability to understand and remember detailed instructions and carry out simple instructions, and a job requiring Level 3 reasoning. Nor does there appear to be an intrinsic conflict because it does not necessarily follow that a person who lacks the ability to carry out detailed instructions cannot apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or from standardized situations.

To the extent that a question about conflict existed, the ALJ resolved the question by asking the VE whether his testimony was consistent with the DOT.[60] The VE responded, "yes." Rivera did not challenge the VE in that regard. The record provides an adequate basis for relying on the VE's testimony, because the record does not indicate that Rivera's mental condition deteriorated to the extent that Rivera can no longer perform the reasoning required by her past work as a store clerk.[61] To the extent that Rivera suggests the VE was unaware of her limitations as reflected in Dr. Wallace's assessment, Rivera's advocate cross-examined the VE about the contents of Dr. Wallace's mental RFC assessment.[62] The VE testified that the limitations would not preclude a person's ability to maintain employability.[63]

To the extent that Rivera relies on the district judge's order in *Baty v. Barnhart*, that determination does not control this case. In *Baty*, the district judge found a "direct, explicit

---

[60]SSA record, pp. 50-51.

[61]*Carey*, 230 F.3d at 146 ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.").

[62]SSA record, pp. 51-52.

[63]*Id*. at p. 52.

conflict between the [VE's] testimony and the DOT that was discussed, albeit briefly, at the hearing before the ALJ."[64]  Here, there is no direct, explicit conflict and no conflict was discussed at the hearing.  Moreover, no medical professional rendered an opinion suggesting that Rivera cannot reason at Level 3.  The VE reviewed Dr. Wallace's mental RFC prior to, and during, his testimony.  The VE was aware of Rivera's limitations and the requirements for her former work.  Rivera has simply scanned the record for implied or unexplained conflicts and the DOT, and presented a purported conflict as reversible error.  To the extent she now believes a conflict exists, she did not deem it sufficient to merit adversarial development in the administrative hearing.  Such effort does not require a remand—the ALJ applied the proper standards and considered the entire record.

**Recommendation**.  Rivera did not meet her burden to show that she is unable to perform her former work as a store clerk.  The ALJ did not make an error of law.  Substantial evidence supports the ALJ's step-four determination.  For these reasons, I recommend denying Rivera's application for relief and affirming the Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[65]

---

[64] *Baty v. Barnhart*, 512 F. Supp. 2d 881, 893 (W.D. Tex. 2007).

[65] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).


Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[66] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[67]

**SIGNED** on May 5, 2010.

*/s/ Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[66] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[67] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).